# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# CENTRAL DIVISION
# LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)     NO. 5:12-CR-79-KKC-MAS-19<br>DEMETRIUS THOMAS TAYLOR, )<br>)<br>Defendant. )<br>)<br>)<br>) | |

## REPORT & RECOMMENDATION

The Court, on referral from District Judge Caldwell, held a hearing to address a reported violation of supervised release conditions by Defendant Demetrius Thomas Taylor. Considering the violation report and the hearing testimony, the Court recommends that the District Court find Taylor guilty of the first four alleged violations, and find that the United States did not prove the fifth violation by a preponderance of the evidence. If Judge Caldwell finds Taylor guilty, the Court will then hear statements from the parties on an appropriate sentence and permit Taylor the opportunity to allocute.

### I.   CASE BACKGROUND

On January 30, 2017, Judge Caldwell sentenced Taylor to a 120-month term of imprisonment followed by a 3-year term of supervised release upon his plea of guilty to the charges of distribution of cocaine and conspiracy to distribute 28 or more grams of cocaine base. [DE 1261 and 1262].

1

## II. FACTUAL BACKGROUND

Taylor's original term of supervision began on February 28, 2020. [Supervised Release Violation Report, p. 1]. On June 3, 2022, the United States Probation Office ("USPO") issued a Supervised Release Violation report alleging Taylor committed the following four violations of his supervision: (1-2) twice knowingly leaving the judicial district without first getting the permission of the court or probation officer; (3) communicating or interacting with someone engaged in criminal activity; and (4) failing to report an interaction with law enforcement to USPO.

The Court held a preliminary hearing on June 17, 2022. At that hearing, the United States introduced the testimony of United States Probation Officer William DeMarcus as well as several screenshots from Taylor's cell phone and from Taylor's Facebook account.[1] Taylor testified on his own behalf. The testimony and evidence presented at the preliminary hearing was sufficient for the United States to sustain its probable cause burden as to those violations. On July 7, 2022, USPO issued an addendum to the Supervised Release Violation Report alleging (5) that Taylor also unlawfully possessed a controlled substance.

At the final hearing, Taylor contested all five violations. The burden was on the United States to prove by a preponderance of the evidence that Taylor violated the terms of his supervision. The United States and Taylor agreed to rest on the testimony and evidence presented at the preliminary hearing as to the violations one through four. Taylor presented testimony from his girlfriend at the preliminary hearing. He also testified on his own behalf.

The Court examines each violation, below, taking them out of sequential order because the findings for Violation 3 are predicated on the facts of Violations 4 and 5. For the reasons stated

---

[1] The parties relied on evidence presented at the preliminary hearing as well as at the final hearing. The Court relies on evidence from both hearings in making its findings of fact and recommendations herein.

below, the Court finds that the United States established the violations by preponderance of the evidence.

### III.    ANALYSIS

A.    **VIOLATIONS 1 AND 2**

As to the first two violations, Taylor did not technically stipulate to the violations, but he admitted leaving the district without obtaining the prior permission of the court or probation officer. The United States introduced the testimony of Officer DeMarcus who stated Taylor admitted to him that Taylor traveled to other states twice, a fact further supported by Taylor's Facebook posts from those locations earlier this year. At the preliminary and final hearings, Taylor 3estified that he had traveled to Tennessee on April 29, 2022, and Florida on January 8, 2022, without permission. Therefore, the Court finds that the United States proved by a preponderance of the evidence that Taylor violated the conditions of his supervised release on two occasions by leaving this district without permission.

B.    **VIOLATION 4**

The Supervised Release Violation Report alleged Taylor invited Jamon Ritter ("Ritter") to his child's birthday party at a hotel. During the birthday party, Ritter became involved in a shooting.[2] Police responded to the scene and questioned Taylor about the incident.

The interaction was described as "brief" by Officer DeMarcus during his testimony at the preliminary hearing, and that the police officer's questioning was focused on Taylor's young daughter's account off the shooting because she had been an eyewitness. DeMarcus's testimony was supported by the police report for the shooting.

---

[2] Taylor was not involved in the shooting.

3

Taylor's story varied somewhat from Officer DeMarcus's testimony, though not materially. Taylor testified after the shooting, he took all of the children who were attending the birthday party into one room to calm them down. The hotel manager came to the room and told him the police were speaking to Taylor's ten-year-old daughter, and that Taylor was needed. Taylor stated he realized his daughter's mother had left the hotel by that time, and he went to see what was happening with his daughter. He stated he walked up to the officer and said "hello," and then the officer began listening to Taylor's daughter's account of the shooting. Per Taylor, the officer was focused on questioning Taylor's daughter, not him. He was only there as a parent.

Ultimately, Taylor testified that he was not aware that this was not the type of contact that believed he was required to report to USPO, and that if he had understood that point, he would have reported the contact. The Court finds that Taylor's account of the situation is credible and substantially like Officer DeMarcus's testimony. Nonetheless, as Taylor has admitted, this is a technical violation of Taylor's terms of supervision.

C.     **VIOLATION 5**

During the investigation of the above violations, USPO seized and examined two cell phones in Taylor's possession (herein after designated as the "Android" and "iPhone"). Based on the review of Taylor's cell phones, USPO filed an addendum to the Supervised Release Report on July 7, 2022, adding the allegation that Taylor unlawfully possessed a controlled substance. There were three categories of evidence supporting this allegation. First, USPO found several photos of marijuana on Taylor's iPhone (in his photo library and Snapchat camera roll) from December 2021 through February 2022. Second, USPO also located a text thread from December 2021 wherein Taylor offered to pay for candles with "weed." Third, in a different text thread, Taylor appears to be explaining to an individual why he has not paid this person. Taylor's text states, "$1000 aint nothing, I wouldn't play no bs but to be honest the trap where the money and dope was got kicked

4

in feds got 15 and the person I had with it that's what's been the hold up." [Addendum to Supervised Release Report].

Taylor testified to explain away the seemingly illegal activity found on his cell phone. First, as to the photos of marijuana, Taylor's girlfriend testified that the photograph of a large bag of what appeared to be unprocessed marijuana buds belonged to her 15-year-old daughter, and that she had taken a photo of it with Taylor's phone because her phone was broken and she wanted to text the photo to her daughter's father. Taylor testified some of the photos were screenshots he had taken from another person's social media feed—a young man Taylor mentors that Taylor was concerned was posting photos of cash and/or narcotics to look cool. Taylor was careful to note in this instance he did not believe the young man he mentors took the photos, but instead that the reposted them from someone else's social media. Taylor explained that these photos did not have the typical indicia of a screenshot (such as the header or footer of the phone) in the photo because he cropped it out prior to saving it.

Second, Taylor explained the apparent exchange of "weed" for candles by testifying that the person selling the candles was a "pothead" and he believed it was more likely she would show up for the scheduled transaction if he promised the marijuana rather than money, though he ended up compensating her for the candles with money, not drugs.

Third, Taylor likewise had an explanation for the text messages quoted above that appear to involve payment for "dope" that was in a "trap" that the "feds" found. He stated he let a friend— who was living with him at the time—borrow his iPhone for a couple of months, and during that time Taylor used his Android phone. Taylor testified he did not log out of his Apple account, change the phone number to the iPhone, or erase the iPhone before or after loaning the phone to this friend. He claimed the friend was a previously convicted felon who was getting his life back

5

together, and Taylor was allowing the friend to live with him to help the friend get back on his feet. The story is not easily verified, however, because Taylor further testified the friend has since died.

The Court finds that there is an overwhelming amount of suspicious activity on Taylor's phone that suggests he possessed controlled substances and/or was trafficking in controlled substances. Moreover, Taylor's testimony is dubious at best. In the end, however, the United States failed to present any evidence that proves by a preponderance of the evidence that Taylor actually or constructively possessed any controlled substances. In making this determination, the Court relies on the Sixth Circuit's guidance in both *United States v. Catching*, 786 Fed. App's 535 (6th Cir. 2019) and *United States v. Bailey*, 553 F.3d 940 (6th Cir. 2009). There was no proof or allegation that Taylor was in actual possession of a controlled substance. *See United States v. Catching*, 786 Fed. App'x 535, 540 (6th Cir. 2019) ("To prove that a defendant actually possessed drugs, the government must establish that the defendant had 'direct physical control' over the drugs when the police arrested him or that he had been seen with the drugs prior to the arrest.") (quoting *Bailey*). Thus, the Court must determine if Taylor constructively possessed marijuana, based on his text messages and the testimony presented at the hearings. "The government must make two showings to prove that a defendant constructively possessed drugs: first, that the defendant exercised dominion or control over the contraband, and second, that the defendant had specific intent to possess the drugs." *Catching* at 540.

Here, the United States has not shown that Taylor exercised dominion or control over any controlled substances. The United States did not present any evidence that USPO found controlled substances on Taylor's person or in his residence. The only evidence of controlled substances in Taylor's physical vicinity came from the statements of Taylor's girlfriend when she testified that

6

her daughter possessed marijuana in the home they share with Taylor. The United States did not introduce any evidence that Taylor exercised dominion or control over the marijuana in the photo on his phone. "[W]here the defendant is in nonexclusive possession of premises on which [illicit contraband] [is] found, it cannot be inferred that he knew of the presence of such [contraband] and had control of [it], unless there are other incriminating statements or circumstances tending to buttress such an inference." *United States v. Bailey*, 553 F.3d 940, 945 (6th Cir. 2009) (quoting Emile F. Short, Annotation, *Conviction of possession of illicit drugs found in premises of which defendant was in nonexclusive possession*, 56 A.L.R.3d 948, 1974 WL 35135, § 4 (1974)) (alterations in original). "This 'other incriminating evidence' must provide some nexus between the defendant and the object he allegedly possessed in order to establish constructive possession[.]" *Catching*, 786 Fed. App'x at 541. The Sixth Circuit has noted the type of "other incriminating evidence" that would provide the requisite nexus is, for example, a witness seeing the defendant with the contraband minutes before being stopped by law enforcement, *United States v. Arnold*, 486 F.3d 177 (6th Cir. 2007), or the defendant being found alone at the stash house with drugs in plain view, where the defendant had sold the same type of drugs on several occasions, including on the day before he was found constructively possessing the drugs, *United States v. Lanier*, 850 Fed. App'x 419 (6th Cir. 2021). The United States did not present any such evidence in this case.

The United States' evidence that Taylor constructively possessed marijuana rested entirely on the photos on his phone. This is simply not enough, because those photos require the Court to conclude, without evidence, that Taylor possessed the marijuana in the photos when the photos were taken. The only "other incriminating evidence" that he was in proximity to the marijuana, such that he could have exercised dominion and control over it, was introduced through the testimony of Taylor's girlfriend to explain the photo on Taylor's phone. The United States was

7

required to put forth "other incriminating evidence" that there was a nexus between the marijuana and Taylor, which leads back to the photo on the phone. The logic is absurdly circular. Neither piece of evidence, taken together or separately, proves that Taylor exercised dominion and control over the marijuana.

The numerous text messages on Taylor's phone that reference drugs trafficking indicate he had an intent to possess marijuana, satisfying the second part of the constructive possession test; however, without sufficient evidence that he exercised dominion and control over any actual marijuana, the Court cannot find Taylor possessed a controlled substance in violation of his terms of supervision.

Again, the Court emphasizes that while Taylor's actions are highly suspicious and his testimony seems dubious, the United States has not met its evidentiary burden as set forth by the Sixth Circuit.

**D.    VIOLATION 3**

The United States alleged that Taylor has repeatedly communicated or interacted with individuals he knows to be involved in criminal activity. These allegations relate, in part, to the conduct described Violations 4 and 5 above. For example, Jamon Ritter had outstanding state warrants related to drug trafficking at the time he attended the birthday party discussed above, but Taylor disclaimed any knowledge of the warrants. Taylor and Ritter are both known members or associates of a group called "More than Family" or "MTF", which Officer DeMarcus testified is a group that is in the process of being validated as a street gang according to local law enforcement.

On the iPhone, USPO discovered a group text message chain that included Taylor, Ritter, and others. Taylor's adult son, who has pending felony charges, was also a member of this text thread. The thread was named "MTF" in the Taylor's iPhone. Officer DeMarcus testified he reviewed some parts of this text message chain, and that it included references to drug trafficking

8

such as "zips" (an ounce of drugs) and "fronting" people (providing drugs on consignment). Once again, Taylor had an explanation for this: he testified that while there may be texts related to illegal activity in the group messages, he was only using the group to send or receive texts related to musical performances. Taylor stated he ignored and/or did not read any other texts.

Additional evidence of Taylor's communication and interaction with individuals he knows to be involved in criminal activity came to light at the final revocation hearing as Taylor provided his many explanations for the otherwise criminal-appearing conduct on his phone. For example, Taylor acknowledged that the individual who he said used his phone for a couple of months (to apparently conduct drug trafficking business) was a convicted felon. Taylor, of course, disclaimed all knowledge of that conduct, despite the fact that this individual lived with him. Taylor acknowledged that the candle seller he purchases from is well-known to him and is a person who uses marijuana regularly. If Taylor's girlfriend's testimony is to be believed, her daughter is involved in the use of a significant amount of marijuana, requires frequent calls by her mother to the police, and Taylor is around this teen significantly enough to be considered a parental figure in her life. Likewise, Taylor's testimony that the photo of money and drugs was a screenshot from someone else's social media, and that Taylor screenshot it with the intention of reaching out to discuss with this young man whether he was trying to imply that he is involved in drug trafficking, strongly suggests the possibly this person is involved in criminal activity and Taylor is in communication with him.

These facts are sufficient for the Court to find that the United States proved by a preponderance of the evidence that Taylor is communicating or interacting with individuals he knows to be involved in criminal conduct.

## IV.   CONCLUSION

The Court finds that the vast majority of Taylor's testimony was dubious. However, even if the Court takes all of Taylor's testimony at face value, he admitted to sufficient facts that prove the first four violations by a preponderance of the evidence. Taylor directly admitted to Violations 1, 2, and 4. As to Violation 3, Taylor denied knowledge of Ritter's alleged criminal conduct (as set forth in the violation report) but admitted to knowingly communicating with the MTF text group (which clearly involved discussion of criminal conduct, whether Taylor participated in that portion of the conversation or not) as well as the candle seller who is a regularly marijuana user. As explained above, the Court finds the texts and photos on Taylor's phone highly suspicious; however, in considering *Catching*, *Bailey*, and *Lanier*, the Court cannot find that the United States proved by a preponderance of the evidence that Taylor constructively possessed a controlled substance.

For the reasons outlined above, the Court **RECOMMENDS** the District Court find by a preponderance of the evidence that the United States established that Taylor committed alleged Violations 1 through 4 of his supervised release but did not establish Violation 5 by a preponderance of the evidence.

The Court **RECOMMENDS** that Taylor be found guilty of these violations. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within 14 days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Should Judge Caldwell adjudge Taylor guilty of the violations, the matter will be placed back on the Court's docket for a hearing on the appropriate sentence.

Entered this 28th day of July, 2022.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge